**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

———————————————————
                           )

**BRENDA M. LEWIS**           )

                           )

        **Plaintiff,**       )

                           )

        **v.**               )      **Civil Action Number 3:06CV547**

                           )

**MICHAEL J. ASTRUE**      )

**Commissioner of**         )

**Social Security,**         )

                           )

———————————————————)

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment.[1]  The Plaintiff, Brenda Lewis, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Defendant Commissioner denying her application for Social Security Disability (DIB).  The Commissioner's final decision is based on a finding by an Administrative Law Judge (ALJ) that the Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the court's recommendation that the Plaintiff's Motion for Summary Judgment be DENIED; that the Defendant's Motion for Summary Judgment be

---

[1]  The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these rules, the court will endeavor to exclude any personal identifiers such as the Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of the Plaintiff's arguments and will further restrict its discussion of the Plaintiff's medical information to only that which is necessary to properly analyze the case.

GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## PROCEDURAL HISTORY

The Plaintiff applied for DIB on June 24, 2003, claiming disability due to pain, numbness, and cramps in her hips, legs, feet, and lower back, with an onset date of September 12, 2002.  (R. at 87-89, 106-115).  The Social Security Administration (Agency) denied the Plaintiff's claims initially and on reconsideration.[2]  (R. at 55-59, 62-64).  The Plaintiff requested a hearing and, on February 10, 2005, accompanied by counsel, she testified before an ALJ.  (Supp. Cert. at 35-520).[3] A vocational expert (VE) also testified.  Id.  The ALJ denied the Plaintiff's application, finding that she was not disabled under the Act.  (R. at 23-24).  The Agency Appeals Council (Council) denied the Plaintiff's request to review the ALJ's findings, making the ALJ's decision the final decision of the Commissioner subject to judicial review.  (R. at 5-8).

## QUESTION PRESENTED

Is the Commissioner's decision that the Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the Social Security Administration.  20 C.F.R. Part 404, Subpart Q.  *See also* § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

[3] A transcript from a different hearing involving a different claimant was included in the original record of the case.  (R. at 35-52).  As a result, the Defendant has provided a Supplemental Certification (Supp. Cert.) containing the correct transcript.  However, the supplemental submission is not fully paginated in order for it to be inserted into the original record without changing the pagination of the entire record and so citation will be made to subsequent hearing excerpts by page and letter reference as noted in the submission.

## STANDARD OF REVIEW

In reviewing the decision of the Commissioner to deny benefits, the court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support its conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the court is required to examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920 and 404.1520; Mastro, 270

F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ and it is that process that

a court must examine on appeal to determine whether the correct legal standards were applied and

whether the resulting decision of the Commissioner is supported by substantial evidence on the

record.

    The first step in the sequence is to determine whether the Plaintiff was working at the time

of application and, if so, whether the work constituted "substantial gainful activity" (SGA).[4]  20

C.F.R. §§ 416.920(b) and 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and

the claimant must be found "not disabled" regardless of any medical condition.  Id.  If the claimant

establishes that she did not engage in SGA, the second step of the analysis requires her to prove that

she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her]

physical or mental ability to do basic work activities."  20 C.F.R. §§ 416.920(c) and 404.1520(c).

In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause

more than a minimal effect on one's ability to function.  Id.  At the third step, if the claimant has an

impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1 (listings of impairments) and lasts, or is expected to last, for twelve months or result in death, it

constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d) and

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether a claimant can return

---

    [4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R.
Substantial work activity is "work activity that involves doing significant physical or mental
activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get
paid less, or have less responsibility than when you worked before."  Gainful work activity is work
activity done for "pay or profit, whether or not profit is realized."   Taking care of oneself,
performing household tasks or hobbies, therapy or school attendance, and the like, are not generally
considered substantial gainful activities.  20 C.F.R. § 404.1572.

to his past relevant work[5] based on an assessment of the claimant's residual functional capacity (RFC)[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e) and 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (4th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry her burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments, as reasonably established by the evidence, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a) and 404.1565 (a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (Footnote omitted).

to be disabled and entitled to benefits.  20 C.F.R. §§ 416.920(f)(1) and 404.1520(f)(1).

## ANALYSIS

The ALJ found at step one of the analysis that the Plaintiff had not engaged in SGA since the alleged onset of her disability.  (R. at 27).  At steps two and three, the ALJ determined that the Plaintiff had the severe impairments of chronic lower back and extremity pain, but that the impairments, when considered singly or in combination, did not meet or equal any listing in Regulation 4, Subpart P, Appendix 1, as required for her to be considered disabled at that stage of the analysis.  (R. at 28-29).  In the ALJ's findings,  he determined that the Plaintiff had the following RFC:

> [Plaintiff] can stand for three hours in an eight-hour workday; walk and climb stairs two to three hours in an eight hour workday; sit four hours in an eight hour workday, with an option to alternate sitting and standing; lift and carry up to 15 pounds one to two hours in an eight hour workday; bend, squat, and stoop 1 hour in an eight hour workday; and with pain noticeable at times, but able to carry out assigned duties.

(R. at 31).  At step four, based on the Plaintiff's RFC, the ALJ determined that the Plaintiff would be unable to perform her past relevant work as a cashier/clerk and a manufacturing inspector because those jobs required either light to medium exertion whereas the Plaintiff was limited to a limited range of light work activity.  Id.  Finally, at step five, the ALJ asked the VE whether there were entry, sedentary level jobs available that require only light exertion for a  hypothetical individual who could "stand for at least three hours in an eight-hour workday and sit four hours in an eight-hour workday . . . [who] can lift up to fifteen pounds one to two hours in an eight-hour workday."  Id.  The VE stated in response that such a hypothetical individual could perform the jobs of telemarketer, receptionist, file clerk, and order clerk.  (R. at 32).  Accordingly, the ALJ concluded that the Plaintiff was not disabled under the Act and therefore not entitled to benefits.  Id.

The Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings before a different Administrative Law Judge. (Pl.'s Mem. in Supp. of Mot. For Summ. J. (Pl.'s Mem.) at 8). In support of her position, the Plaintiff presents four theories: (1) that the ALJ did not appropriately consider the medical opinions of Plaintiff's treating physicians; (2) that the ALJ did not carefully consider Plaintiff's subjective complaints in his credibility determination; (3) that the Commissioner failed to meet his burden at step five of the sequential analysis; and (4) that the ALJ failed to properly consider the combined effects of Plaintiff's impairments of back pain, leg pain, and depression. (Pl.'s Mem. at 5-7). The Defendant argues that the record before the court does not justify the payment of benefits, and that the ALJ's decision should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof (Def's Mot.) at 1, 20).

**A.    *The ALJ properly considered the medical opinions in the record***

Plaintiff contends that the ALJ completely ignored and rejected the professional opinions of the Plaintiff's treating physicians and rehabilitation therapist. (Pl's Mem. at 5). Under applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 404.127(d)(2); SSR 96-2p. However, while 20 C.F.R. § 404.1527 provides that the opinions of a treating physician are generally entitled to more weight than those of a non-treating physician, the regulations do not require that the ALJ accept such opinions in every situation. Jarrells v. Barnhart, 2005 U.S. Dist. LEXIS 7459 at 10-11 (W.D. Va. 2005). If there is no treating source opinion that is entitled to controlling weight, the ALJ must analyze all of the medical opinion

evidence according to the delineated factors set forth in § 404.1527(d).

Here, the ALJ weighed the evidence regarding the professional opinions of the Plaintiff's treating and non-treating physicians.  Specifically, the ALJ reviewed the opinion(s) of the plaintiff's primary care physician, Dr. Shelton, however, Dr. Shelton failed to offer any opinions concerning the Plaintiff's RFC.  (R. at 28, 198-99).  Nevertheless, the ALJ did take note of Dr. Shelton's awareness of another physician's (Dr. Young) prescription of Ultram to address the Plaintiff's back pain and the fact that Dr. Shelton continued the same medication regimen after seeing the Plaintiff. (R. at 28).  In any event, the ALJ did not discuss the Plaintiff's physical therapist's report as part of his findings, because it did not address the central issue of the Plaintiff's RFC.  (R. at 161-65).

While a physical therapist's opinion may be used by the ALJ to determine disability, physical therapists are only classified as "other sources" and not "acceptable medical sources" whose opinions are necessary to consider in a disability analysis.  20 C.F.R. § 404.1513(a)(1), (d)(1).  In addition, the ALJ adopted Dr. Young's opinions of the Plaintiff's capabilities upon completion of a diskectomy that was performed on September 14, 2002.  (R. at 28).  The ALJ clearly discussed Dr. Young's opinion of the Plaintiff's MRI scans regarding lack of neural compression at the L5-S1 level.  The ALJ also noted, based on Dr. Young's opinion, that the Plaintiff could only perform sedentary employment; lift up to twenty-five pounds; and that she could not stand for prolonged periods of time, bend or twist.  (R. at 28, 30, 31, 182).

In addition to the Plaintiff's treating physicians, the ALJ noted all of the relevant medical opinions found in the record  in reaching his determination, including that of  Dr. Hundley (R. at 28, 31), both state agency physicians regarding their physical RFC assessments (R. at 28, 31), and Dr. Barrell for his state agency mental RFC assessment.  (R. at 28).  Consistent with the RFC assessments

of the state agency physicians, the ALJ noted that the Plaintiff "could lift and carry 10 pounds frequently; stand and walk at least 2 hours in an 8-hour workday; sit 6 hours in an 8 hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl." (R. at 28) (citing Ex. 12F at R. 214-22). The ALJ also relied on the opinion of Dr. Hundley in which the doctor opined that the Plaintiff could perform a range of light and sedentary work. (R. at 28, 210). The ALJ specifically highlighted Dr. Hundley's opinion that the Plaintiff could stand at fifteen minute intervals, three hours per day; sit for short periods with frequent position change, four hours per day; walk and climb stairs moderately, but to be limited to short distances for two to three hours a day; bend, squat and stoop up to one hour per day; make fine manipulative hand movements unrestricted throughout a work day; and carry weights over fifteen pounds only one to two hours per day. (R. at 28). Therefore, to the extent required by applicable Social Security regulations, the ALJ analyzed all of the opinions of the Plaintiff's treating physicians as well as other medical opinions as contained in the record.

**B.**   ***Substantial evidence supports the ALJ's determination that Plaintiff is not disabled under the Act***

As to the Plaintiff's second argument, she asserts that the ALJ's adverse credibility analysis of her subjective complaints was not supported by substantial evidence. (Pl.'s Mem. at 6). Specifically, she argues that the reasons the ALJ used in discounting her credibility were inaccurate. Id.

After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), (f) and 404.1545(5)(I). The RFC determination must incorporate all of the claimant's impairments that are supported by the objective medical evidence in the record, including any impairments based on a

-9-

claimant's subjective complaints.  20 C.F.R. § 404.1545(a).  However, in analyzing a claimant's subjective complaints such as pain, fatigue, weakness, *etc*., the ALJ must utilize a two-step process in considering the evidence.  Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529(a); SSR 96-7p (1996 SSR LEXIS 7, at 5-7).  The first step is to determine whether there is an underlying medically-determinable physical or mental impairment or impairments that reasonably could produce the pain or other symptoms.  Id.  If an underlying impairment reasonably could be expected to produce the pain or other symptoms, then the second step requires the ALJ to evaluate the claimant's statements about the intensity and persistence of the subjective symptoms and the extent to which they could affect the claimant's ability to work.  Craig, 76 F.3d at 595.  The ALJ's step-two evaluation must take into account "all available evidence," and a credibility finding of a claimant's statements regarding the extent of any symptoms is made by considering the objective medical evidence of symptoms, the report of the claimant's daily activities, any aggravating factors, and any treatment or use of medications to relieve symptoms, to determine if such factors are consistent or contradictory with respect to the claimant's subjective complaints.  Craig, 76 F.3d at 595-96; SSR 96-7p (1996 SSR LEXIS 7, at 5-6, 11).  Craig found that "subjective evidence...cannot take precedence over objective medical evidence or the lack thereof.  Id. at 592 (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)); see also 20 C.F.R. 404.1529(a).  At each step of the analysis, the ALJ must provide sufficient explanation to substantiate his conclusions, including the weight assigned to relevant evidence, so that a reviewing court can evaluate the basis for the final decision.  Ivey v. Barnhart, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).  Deference is to be accorded to an ALJ's credibility determination with respect to subjective allegations.  See, e.g., Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.

1984).

Here, the ALJ noted that the Plaintiff testified that she was unable to work due to hip and leg difficulties and back pain. (R. at 30).  The Plaintiff stated that she could not walk more than half a mile total before she has pain in her legs and hips, has to move up and down while sitting or watching television for an hour, has difficulty staying awake to the extent that she must take a one hour nap during the day, and that it would be too painful for her to sit six hours continuously during an eight-hour workday. (Supp. Cert. at 52D, 52H, 52M).  The ALJ apparently took into consideration, at least to some degree, the limitations encompassed by the Plaintiffs subjective complaints and allegations in light of the medical and non-medical evidence of record.  (R. at 30).  In fact, the ALJ specifically found that "the claimant's  allegations regarding her limitations, although *generally credible*, do not rise to the level of disability under the standards set forth in the Social Security law and regulations."  Id. (emphasis added).  The Plaintiff claims that the ALJ's analysis is incomplete, identifying three areas that she believes were improperly analyzed: (1) the ALJ's failure to specify which allegations of pain and/or other symptoms he found not to be credible; (2) the ALJ's lack of discussion of the SSR 96-7p mandated factors; and (3) the ALJ's failure to state clear and convincing reasons for rejecting the Plaintiff's testimony.  (Pl.'s Mem. at 6).

As previously noted, the ALJ found the Plaintiff's allegations "generally credible" and it is not necessary that specific reasons for discounting a claimant's description of a particular symptom be delineated; rather, the ALJ's decision only needs to be supported by substantial evidence in a more general sense.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  Here, the ALJ relied on what fairly appears to be consistent medical evidence regarding the Plaintiff's condition, combined with her ability to perform work duties that provides substantial evidence to support his finding of non-

disability.

For example, Dr. Young had seen Plaintiff frequently over a year long time period. He consistently found good motor strength throughout her upper and lower extremities, a normal and unassisted gait, and a good range of motion in her lumbar spine. (R at 174, 184, 188, 191). Dr. Young also noted that the Plaintiff's flexion and straight leg raise varied from no limitation and pain on one occasion, to leg pain on a straight leg raise bilaterally on the left at about forty degrees, and on the right at forty-five degrees, on yet another examination. (R. at 184, 188). As a result of his examinations, Dr. Young concluded that the Plaintiff needed to, and presumably could, seek sedentary employment given her inability to stand for prolonged periods of time, bend or twist, or lift anything greater than twenty-five pounds. (R. at 182).

Dr. Hundley reached a similar conclusion regarding symmetric motor strength and the Plaintiff's normal range of motion, excluding her dorsolumbar spine, hip extension, and internal/external rotations. (R. at 209, 212-13). He found that the Plaintiff experienced *moderate* impairment to her activities because of her back pain, resulting in ability to stand at only fifteen minute intervals, three hours per day. (R. at 210). In addition, he stated that she was able to sit for short periods, though with frequent changes in position, four hours a day. Id. Also, Dr. Hundley opined that the Plaintiff could walk and climb stairs over short distances two to three hours a day, and could bend, squat or stoop in a limited fashion one hour a day. Id. He also noted that the Plaintiff experienced no problems with fine manipulative hand movements, and that she could use her hands unrestricted for an entire workday. Id. With regard to lifting, Dr. Hundley found that the Plaintiff could lift up to fifteen pounds one to two hours a day. Id.

The state agency officials findings were consistent in their RFC examinations of the Plaintiff,

with one physician concluding that the Plaintiff could stand and/or walk approximately six hours in an eight-hour workday with periodic alternating of sitting and standing. (R. at 201). The other state agency physician found that the Plaintiff could stand and/or walk two hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (R. at 215). Both physicians found that the Plaintiff could lift and carry ten pounds frequently. (R. at 201, 215).

In addition to claiming physical impairments, the Plaintiff alluded to mental impairments resulting from her physical state. The ALJ determined that the plaintiff did not have a severe mental impairment. The finding is supported by substantial evidence in the record. Specifically, the ALJ highlighted the state agency psychologists' opinion(s) that the Plaintiff did not have a severe mental impairment as defined by category 12.04 which addresses affective disorders and without any evidence of any other mental impairment. See 42 U.S.C. § 423(d)(5), 20 C.F.R. § 404.1512, Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Other evidence of record supports the ALJ's finding of non-disability as well. In particular, the ALJ  found that the Plaintiff's daily activities do not support a finding that she had a complete inability to work. While the daily activities listed by the Plaintiff were consistent with an inability to perform at any exertional level greater than light, i.e., medium or heavy, such restricted capacity does not preclude employment on a sedentary, light exertion level. The ALJ specifically noted that the Plaintiff stated that she was able to cook, eat with her family, do her own shopping, take care of all of her personal needs, and perform all the household chores such as making beds, dusting, washing dishes, sweeping and doing laundry. (R. at 30). A reasonable inference is that because she could participate in such activities while sitting down or standing, she would be able to perform sedentary work at some level if she were to be actively engaged. The ALJ also noted that because

the Plaintiff was still able to operate a vehicle and watch television, in addition to the list of other activities she could perform, there was nothing to prevent her from sitting for extended periods. Although the Plaintiff stated that she had to take a nap after watching television, that does not mean that she would unexpectedly fall asleep while performing some sedentary job. (R. at 243). There is a difference between simply sitting and watching television, and sitting at a job where one is engaged in some sort of interactive work. Additionally, there is nothing in the Plaintiff's list of activities (or lack thereof) that indicated she had problems with persistence, pace, or concentration that would preclude her from sedentary type work. Moreover, the ALJ did not rely solely on what he concluded to be an accurate description of what activities the Plaintiff could engage in as a deciding factor; instead, he noted it as one factor among many. Simply stated, a fact finder could reasonably conclude that the activities as described by the Plaintiff demonstrated that she could perform at a sedentary, light exertion employment level.

The Plaintiff also contends that the ALJ failed to consider or apply the SSR 96-7p mandated factors concerning the issue of determining her credibility. However, the ALJ did, in fact, discuss all of the mandatory factors set forth in the Ruling. The Ruling provides "that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements," the following seven factors:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual has takes or has taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes

every hour, or sleeping on a board); and

(7)Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

As to the Plaintiff's daily activities, the ALJ noted her sleeping patterns, her ability to perform household chores, her preparation of meals for herself and family, her bi-weekly shopping and driving to the store, and her daily television watching. (R. at 30). As to the second factor, the ALJ highlighted the Plaintiff's subjective complaints regarding the pain in her back, feet, legs and hips, and how the pain affected her ability to complete her daily tasks. Id. The ALJ also discussed the third factor when mentioning the Plaintiff's complaint that she could not walk more than a half mile without experiencing pain in her legs and hips, as well as the need for help lifting household items or groceries when the item was heavier than a gallon of milk. Id. As to medication, the ALJ discussed the Plaintiff's use of Ultram/Tramadol and how her medication made her drowsy during some parts of the day, requiring a resting period from watching television. Id. The ALJ dealt with the fifth factor by recounting the Plaintiff's past surgeries and the epidural steroid injections she had received before the surgeries. Id. The ALJ also considered the sixth factor by discussing the Plaintiff's six month recuperative period following her second surgery. Id. In addition, the ALJ also mentioned the "up and down" nature of her changing positions during television viewing, and her need for a one hour nap after watching television. Id. Concerning the seventh and final factor, the ALJ referenced the Plaintiff's cessation of activities she had previously participated in such as horseshoe tournaments and attending church, as well as the requirement for her to obtain help to load/unload heavier grocery items. Id. Thus, based on the ALJ's careful reference to the record and his analysis of the Plaintiff's medical and subjective complaints, the ALJ did properly consider all of the various elements of the Ruling.

**C.   *An analysis of the combined effect of the Plaintiff's impairments was properly evaluated by the ALJ***

The Plaintiff further asserts that the ALJ failed to carefully consider the severity of her multiple impairments and their combined effect on her ability to work based on C.F.R. §404.1523. (Pl's Mem. at 6).  The degree of analysis that an ALJ must engage in when considering the issue of the impact of combined impairments is not extensive.  See, e.g., Hamilton v. Sec'y of Health and Human Serv., 961 F.2d 1495, 1500 (10th Cir. 1992).  An ALJ need not identify every aspect of the analysis regarding cumulative impairments.  See Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986) (per curiam).  While the ALJ did not specifically discuss every aspect of the evidence, testimonial and otherwise, relevant to the issue, it fairly appears from his otherwise thorough evaluation of the evidence that he based his ultimate decision on the totality of the record.  Certainly the ALJ noted the necessity of considering the Plaintiff's combined impairments by noting that: "[t]he Regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis (20 CFR § 404.1523)."  (R. at 29).  Furthermore, he noted in discussing the Plaintiff's RFC that:  "[i]n making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence..."  Id.  The ALJ also stated in his decision:  "[w]eighing the objective evidence from the treating, examining, and non-examining physicians, and considering all of the hearing testimony, the administrative law judge concludes..."  (R. at 31).  Moreover, the hypothetical posed to the VE fairly included all evidence of impairment as reasonably supported by the evidence and the ALJ detailed and evaluated all of the Plaintiff's subjective allegations. (R. at 29-31).  Accordingly, by making reference to his awareness for the need to weigh the combined effects of all plaintiff's impairments, and his discussion of various aspects of

the issue, it must be concluded that the ALJ fairly considered the Plaintiff's combination of impairments. (R. at 29).

**D.   *The ALJ presented a proper hypothetical question to the vocational expert at step 5 of the sequential analysis regarding job capability***

In regard to the Plaintiff's fourth argument, she asserts that the hypothetical posed to the VE by the ALJ led the VE to reach an improper conclusion that did not take into account the evidence of record of the Plaintiff's impairments.  Thus, the Plaintiff claims that the employment options the VE identified cannot be relied upon as a basis for finding she was employable.  (Pl.'s Mem. at 7).

In the fifth and final step of the analysis, a claimant is disabled if the ALJ determines that the claimant cannot engage in any kind of substantial gainful work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g)(1).  Normally, if a claimant's RFC demonstrates that the claimant suffers only from exertional limitations, the ALJ will consult the medical-vocational guidelines (grids) found at 20 C.F.R. Part 404, subpart P, Appendix 2, to determine whether there are jobs existing that a claimant would be able to perform based on the claimant's RFC.  Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989).  However, if a claimant suffers from both exertional and nonexertional limitations, and the nonexertional condition affects the claimant's RFC to perform work of which he is exertionally capable, then the ALJ must utilize the assistance of a vocational expert in assessing whether, nevertheless, there are jobs in significant numbers that the claimant could perform.  The ALJ elicits such an opinion by posing a hypothetical question to the VE of an individual with the claimant's age, education, work experience, and limitations as reasonably substantiated by medical evidence in the record (the RFC).  Id.  The ALJ may find the claimant not disabled only if the VE's testimony establishes that there exists a significant number of jobs in the national economy that the claimant would be able to perform with his RFC; however, the VE's

testimony is valid only if a proper hypothetical is employed that encompasses all of the claimant's work-related limitations and abilities as described by the claimant's RFC. Id. at 50. Therefore, a hypothetical that does not include all of a claimant's limitations as reasonably established by the evidence does not provide a reliable assessment of relevant work opportunities. Id.

Here, the ALJ posed a hypothetical to the VE using the exertional and nonexertional limitations for employment that the ALJ had determined at step four. (R. at 31, Supp. Cert. at 52N-52S). Specifically, the VE was asked:

> Let's assume we have an individual of the claimant's age, that is between the age of 40 and 42, high school graduate and some training in cosmetology. Further assume that I find that she's confined as follows – I'll be reading from 11F, page three, a consultative examination that was done in '04. Able to stand 15 minute intervals, three hours per day. Able to sit for short periods, requiring frequent changes in position four hours a day. Ability to walk and climb stairs is moderately limited to short distances two to three hours a day. Ability to bend, squat and stoop is markedly limited, one hour per day. Fine manipulative movements of hands are unrestricted, eight hours a day. Ability to carry weights over 15 pounds is markedly limited, one to two hours per day. Her testimony was that it would be around eight to ten pounds and I think that would be reasonable. . . . I guess you would call this a sedentary, sit/stand situation?. . . With these limitations, can you identify any occupations that exist in significant numbers in the economy that this person could perform?

(Supp. Cert. at 52P-52Q). In response to the hypothetical, the VE identified three job categories existing in significant numbers that the Plaintiff would be able to perform: telemarketer (8,800 jobs in Virginia); receptionist (4,800 in Virginia); and order clerk (9,000 jobs in Virginia). (Supp. Cert. at 52R). The VE also made reference to the Dictionary of Occupational Titles (DOT) for a specific example of each type of job that was available, and to the extent that a sit/stand option was not mentioned, he relied upon his job placement experience to state that the limitation was not a hindrance for the jobs he had identified. Id. The Plaintiff emphasizes that the ALJ's reference to: "I guess you would call this a sedentary, sit/stand situation?" in characterizing the Plaintiff's RFC

was lacking.  While the court in <u>Colevas v. Barnhart</u>, 2003 U.S. Dist. LEXIS 3960 (W.D. Va. 2003) (unreported), was concerned with an explicit medical opinion that the claimant could perform light work, in the present case the ALJ simply inquired of the VE whether Dr. Hundley's opinion regarding the Plaintiff's limitations qualified her for sedentary, sit/stand employment.  (Supp. Cert. at 52Q).  The ALJ did not specify that such limitations required only a sedentary, sit/stand option. In fact, in response to the VE's affirmative response, the ALJ then inquired about potential occupations that exist in significant numbers that the Plaintiff would be able to perform based on such limitations.  Therefore, the Commissioner  satisfied his burden at the final step of the sequential analysis and the ultimate decision denying benefits is supported by substantial evidence, having been arrived at by application of the correct legal standard.

## CONCLUSION

Based on the foregoing analysis, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment be DENIED; that the Defendant's Motion for Summary Judgment be GRANTED; and that the final decision of the Commissioner AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

It is so Ordered.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the**

**determinations contained in the report and such failure shall bar you from attacking on appeal**

**the findings and conclusions accepted and adopted by the District Judge except upon grounds**

**of plain error.**

_____/s/_____

Dennis W. Dohnal
United States Magistrate Judge

Date:__March 27, 2007____